IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RON LESLIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| v. | ) | _____ |
| | ) | |
| RANGEWATER REAL ESTATE, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Comes now, Ron Leslie, Plaintiff and respectfully shows as follows:

COUNT ONE

1.

This is an action for legal and equitable relief to redress discrimination in housing on the basis of disability. This action arises under The Fair Housing Act, 42 U.S.C. § 3601, et seq.

2.

This Court has jurisdiction of this action under 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

3.

Plaintiff, is a natural person with disabilities as defined in 42 U.S.C. § 3662(h), whose disability substantially limits one or more major life activities.

1

Specifically, he suffers from several medical <u>inter</u> <u>alia</u> which impacts his ability to care for himself, to perform manual tasks, to see, to hear, to eat, sleep, walk, stand, or lift.

4.

Plaintiff, is a natural person with disabilities as defined in 42 U.S.C. § 3662(h), whose disabilities impair his ability to complete tasks and meetings by telephone. Communications by mail or email are requested.

5.

Plaintiff is a natural person living in Georgia who attempted to rent an apartment from the Defendant for personal family and household purposes. This apartment is located at Arabelle Perimeter, 1110 Hammond Drive, Sandy Springs, GA 30328.

6.

Defendant Range Water Real Estate, LLC is a Domestic Limited Liability Company, regularly doing business in Fulton County. This Defendant's registered agent is located in Gwinnett County, and is subject to the jurisdiction of this Court. At the time of filing this complaint, Defendant Range Water Real Estate, LLC was a multifamily real estate company managing Arabelle Perimeter (hereinafter Arabelle).

7.

Defendant knew and knows of Plaintiff's disabilities as Plaintiff has made known the same to the agents of the Defendant.

8.

Defendant took the adverse action set out in paragraph 11 to 46 below.

9.

The actions of the Defendant as set forth herein violated 42 U.S.C. § 3604(f)(1)(B).

10.

Defendant took the adverse action set out in paragraphs 11 to 46 below.

11.

On June 6, 2020 Plaintiff inquired online regarding a unit at Arabelle Perimeter.

12.

On June 8, 2020 Plaintiff gave the leasing agent assigned to Plaintiff, the accommodations he needed for his unit. She showed him unit 471, and he decided to lease it.

13.

On or around June 9, 2020 Plaintiff purchased money orders to cover the application and deposit for unit 471 totaling $725.

14.

He arrived back at the property and met with the Assistant Manager in his office, so that he could enter his application into the system. He placed Plaintiff's paper application inside a blue file folder marked Apt. 471. He entered Plaintiff's personal identifying information into a computer program called Yardi to reserve the unit.

15.

On June 10, 2020 Plaintiff noticed on the Arabelle website, that the unit 471 that Plaintiff had leased was still showing as available to rent to new applicants. He contacted the Defendant via voicemail and email to inquire, but he didn't get a response.

16.

On June 13, 2020 Plaintiff noticed on the Arabelle website, that the unit 471 that Plaintiff had leased was still showing as available to rent to new applicants. Plaintiff contacted the Defendant again via voicemail and email to inquire, but he didn't get a response. He noticed there was a unit 457 available for rent, which had even more of the accommodations Plaintiff needed in unit, and asked his application could be switched. However, he didn't get a response.

17.

On June 15, 2020 Plaintiff noticed on the Arabelle website, that both unit 471 and unit 457 were no longer showing available to rent to new applicants. Plaintiff again contacted the Defendant again via voicemail and email to inquire, but he didn't get a response.

18.

On June 16, 2020 Plaintiff visited the Arabelle Office since he had been unable to reach anyone by phone or email. He met with a staff member who he believes is the property manager. She informed him that his application was removed from the unit 471 file folder and lost somehow, although no one had previously so informed Plaintiff. She wasn't sure if it was shredded or what happened to it. As a result, Plaintiff was reassigned to unit 337. This unit is in the back of the property and did not meet the accommodations that Plaintiff needed and requested in writing.

19.

On June 18 2020 since Plaintiff had been removed from the unit that he had applied for and submitted deposits for without any explanation, he requested a refund via email. He did not get the refund or a response.

20.

On June 22, 2020 Plaintiff received an email from Assistant Property Manager Seth Truett, asking for Plaintiff to unlock or lift the security freeze on his credit report so he could process Plaintiff's application.

21.

On June 24, 2020 Plaintiff followed up with Seth Truett via email to inquire about his refund.

22.

On July 8, 2020 after not being able to reach anyone via phone or email, Plaintiff contacted Mr. Truett regarding 1 bedroom availability. According to Arabelle Perimeter's website, unit 759 was available and met my accommodation requirements. However, Plaintiff did not get a response.

23.

On July 10, 2020 Plaintiff followed up with Mr. Truett via email asking if he received Plaintiff's July 8, 2020 correspondence. However, he did not get a response regarding unit 759.

24.

On July 16, 2020 Plaintiff followed up with Mr. Truett again via email. Plaintiff mentioned his disabilities in writing, and requested an accommodation with assisting me to finalize reserving unit 759. He has never responded.

25.

As of July 29, 2020 units 471, 457, and 759 were no longer available. And the Defendant has refused to refund Plaintiff's application fees and deposits.

26.

Defendant by and through its' agents refused to honor the bonafide offer of a 14 month lease agreement including a move in special of 2 months off that was made to him. This offer damages the Plaintiff in the amount of $6,050 as this will not be an offer that he will have at another apartment community he finds.

27.

Defendant has refused to disclose apartment availability of comparable units, or any services or promotions regarding alternative lease terms which are being offered to other prospective applicants and current tenants.

28.

Defendant by cancelling the Plaintiff's residential application, made it more difficult and prolonged the process of the Plaintiff finding a new place to live.

29.

The Plaintiff has a disability which makes him unable to reliably attend scheduled meetings outside his home. Traveling outside his home to attend meetings worsens his symptoms. Being a medically fragile person, the threat of COVID-19 intensifies his symptoms. In addition, his symptoms and functioning

varies by day to day and he is unable to reliably schedule meetings at set times. Accordingly, finding an accommodating apartment has delayed Plaintiff.

30.

Additionally, Plaintiff has a disability which impairs his cognitive functioning. In order to complete tasks, he requires additional processing time and frequent breaks. His disabilities limit his ability to process information or complete tasks within a limited time frame or during a meeting. Attending frequent in-person meetings would not accommodate his disability needs.

31.

Plaintiff had an obligation to his then current landlord to move out of his current apartment as of lease end. This move out was planned by June 30, 2020 as his current apartment had been "pre leased" to a future tenant.

32.

The obligations of the Plaintiff under his lease agreement with his current landlord included a provision which addresses "Holding Over."

33.

According to this lease, since holding over has occurred, the Plaintiff is required to pay 25% over the existing rent, and is liable for all rent for the full term of the previously signed lease contract of the new resident who can't occupy because of the hold over.

34.

If the Defendant hadn't cancelled his application unjustly, Plaintiff would have been able to fulfill the then current lease requirement and move out by June 30, 2020. Because of this, Plaintiff has been damaged in the amount of $21,367.50.

35.

Because the Plaintiff's apartment was preleased, and he can physically move out timely because of his disability, Plaintiff is now responsible for this new tenant's lease according to the agreement.

36.

It is intentional and willful acts of the Defendant that has damaged the Plaintiff.

37.

Defendant violated 42 U.S.C. § 3604(f)(2) as set out herein by placing conditions on Plaintiff solely because of his disabilities that were not placed on other residents.

38.

Plaintiff numerous times requested accommodations for his disability.

39.

These requests for reasonable accommodations would not have have impose a financial or administrative burden on the Defendant.

9

40.

Each of the requested accommodations was necessary to afford the Plaintiff an opportunity to use and enjoy living in the apartment complex.

41.

At all times Defendant refused to make the accommodation.

42.

Defendanhs took adverse action against him because of such disabilities.

43.

As a proximate result of Defendant's actions, Plaintiff was damaged in the amount of $103,768.93 plus $150,000 in emotional distress damages.

44.

The actions of Defendant was taken in reckless disregard of Plaintiff's rights under 42 U.S.C. § 3604(f)(1) and Defendant is liable to Plaintiff in the amount of $100,000 in punitive damages pursuant to 42 U.S.C. § 3613(c)(1).

45.

Plaintiff is entitled to reasonable attorney fees pursuant to 42 U.S.C. § 3613(c)(2).

## COUNT TWO

46.

Paragraphs 2, 4-8, and 10-45 are realleged as though fully set out.

47.

Plaintiff is a natural person who suffers from a disability as set out in O.C.G.A. § 8-3-201 (7).

48.

Defendant violated Plaintiff's rights under O.C.G.A. § 8-3-201.

49.

The actions of Defendant showed willful misconduct, malice, fraud, wantonness, or that entire want of care which would raise the presumption of conscious indifference to consequences or to Plaintiff's rights. Plaintiff is entitled to punitive damages in the amount of $100,000.

50.

Plaintiff is entitled to reasonable attorney fees.

## COUNT THREE

51.

Paragraphs 48-50 are realleged as though fully set out.

52.

Plaintiff is a natural person living in Georgia who rented an apartment from Defendant for personal, family, and household purposes.

53.

The actions of Defendant as set out above were consumer acts or practices.

54.

The violations of the Fair Housing Act and its Georgia counterpart were per se violations of the Georgia Fair Business Practices Act.

55.

As a proximate result, Plaintiff was damaged in the amount of $259,768.97.

56.

The damages should be trebled because of Defendant's intentional misconduct.

57.

Plaintiff is entitled to punitive damages of $50,000 because of Defendant's intentional misconduct.

58.

Plaintiff is entitled to reasonable attorney fees.

Wherefore Plaintiff prays:

1) For damages in the amount set out above including punitive damages in the amount of $150,000 actual damages in the amount of $253,768.97 as trebled;

2) Reasonable attorney fees;

3) Jury trial;

4) Such other and further relief as is just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Goldberg & Cuvillier, P.C. | /s/ Ralph Goldberg |
| 3469 Lawrenceville Hwy., Ste. 102 | Ralph Goldberg |
| Tucker, GA 30084 | Georgia Bar No. 299475 |
| (770) 670-7343 | Attorney for Plaintiff |
| (770) 670-7344 |  |
| attorneygoldberg@hotmail.com |  |